IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action Nos.    08-cv-00506-WYD
08-cv-01645-WYD
08-cv-01870-WYD
08-cv-02109-WYD

IN RE: RICKY DONOVAN VAN VLEET, d/b/a FIRST FINANCIAL CENTRE, INC.

   Debtor,

DOUGLAS BAILEY,

   Appellant,

v.

TOM H. CONNOLLY,

   Appellee.

_____

Civil Action No.    09-cv-00433-WYD

IN RE: RICKY DONOVAN VAN VLEET, d/b/a FIRST FINANCIAL CENTRE, INC.

   Debtor,

TOM H. CONNOLLY, Trustee, and
KAKULA ISLAND RESORT, LIMITED,

   Plaintiffs,

v.

DOUGLAS BAILEY and
TRACY BAILEY,

   Defendants.

_____

**ORDER**

_____

I.    INTRODUCTION

THIS MATTER comes before the Court on four separate appeals by Appellant

Douglas Bailey ("Appellant") arising out of the chapter 11 bankruptcy case of Ricky

Donovan Van Vleet ("Debtor"), d/b/a First Financial Centre, Inc.  The appeals are as

follows: 08-cv-00506-WYD; 08-cv-01645-WYD; 08-cv-01870-WYD; and 08-cv-02109-

WYD.  Throughout the course of the bankruptcy proceedings, Appellant has appealed

eleven orders of the United States Bankruptcy Court for the District of Colorado

("Bankruptcy Court").  The four pending appeals all relate to the Bankruptcy Court's

issuance of civil contempt sanctions.  Appellant/Defendants also filed a motion to

withdraw the reference (docket #1) in civil case no. 09-cv-00433-WYD.  Since the

appeals and the motion to withdraw the reference arise from the same underlying

bankruptcy proceedings and implicate common issues of law and fact, I address all of

them in this Order.

II.   BACKGROUND

The following facts are relevant to the appeals and motion currently pending

before the Court.  On October 11, 2006, Debtor filed a voluntary petition for relief under

chapter 11 of the bankruptcy code.  On January 24, 2007, Tom Connolly ("Trustee")

was appointed as Trustee in this case.  On January 22, 2008, the Trustee filed a Motion

for Order to Show Cause Why Debtor and Mr. Bailey [Appellant] Should Not be Held in

Contempt and for Sanctions ("Contempt Motion").  The Contempt Motion claimed that

Appellant should be held in contempt for violating the Bankruptcy Court's January 7,

2008 order ("Settlement Order"), authorizing the Trustee to settle a lawsuit in the courts

of the Republic of Vanuatu.

The Contempt Motion initiated a contested matter against Debtor and Appellant pursuant to Fed. R. Bankr. P. 9014.  At the time the Contempt Motion was filed, the parties vigorously disagreed as to whether Appellant was present in the state, and my review of the material cited by the parties failed to reveal any convincing evidence one way or the other.  The Contempt Motion was served on Appellant by mail to his then counsel, Mr. Rand.

Upon receipt of the Contempt Motion, Appellant requested an evidentiary hearing.  On January 24, 2008, the Bankruptcy Court held a preliminary hearing on the Contempt Motion and ordered Appellant to appear in person at a February 20, 2008 evidentiary hearing on the Contempt Motion ("Contempt Hearing").  On February 4, 2008, Trustee filed a Notice of Deposition to take Appellant's deposition.  The notice stated that "[t]he deposition shall be conducted pursuant to Rule 30 of the Federal Rules of Civil Procedure, as incorporated by Rule 7030 of the Federal Rules of Bankruptcy Procedure . . . ."  (United States Bankruptcy Court docket #753.)  Appellant objected to the notice, stating that he was out of the country, and further requested that he be permitted to testify by telephone.  The Bankruptcy Court denied the request.  On February 6, 2008, the Bankruptcy Court ordered Appellant to appear for a deposition scheduled by the Trustee not later than February 19, 2008, and again ordered Appellant to appear in person at the February 20, 2008 Contempt Hearing.  The Contempt Hearing commenced on February 20, 2008 and ultimately took place over five days, finally concluding on March 5, 2008.  Appellant did not appear personally at the

Contempt Hearing, but was allowed to participate through his new counsel, Mr. Appel.

On February 20, 2008, the first day of the Contempt Hearing, the Bankruptcy Court held Appellant in contempt of court for failing to attend the deposition or personally appear in court for the Contempt Hearing ("First Contempt Order").  The First Contempt Order is the subject of pending appeal no. 08-cv-00506-WYD, which I address later in this Order.  The Bankruptcy Court then ordered the Appellant to appear at both a deposition on February 27, 2008 and a continuation of the Contempt Hearing on February 28, 2008 in order to purge his contempt.  Appellant again failed to appear in court.  Thus, on February 28, 2008, the Bankruptcy Court entered an order holding Appellant in contempt for violating its orders that Appellant appear personally for an examination pursuant to Fed. R. Bankr. P. 2004 and appear in person at the Contempt Hearing ("Second Contempt Order").

Then, on May 23, 2008, the Bankruptcy Court issued its Order and Judgment on the Contempt Motion ("Third Contempt Order").  Appellant filed an appeal of the Third Contempt Order to this Court, which was assigned to me.  On March 30, 2009, I issued an order in Appellant's appeal of the Third Contempt Order.  (Civil Case No. 08-cv-01188-WYD, docket # 48.)  In my order, after reviewing the relevant Bankruptcy Court orders that formed the basis for the Third Contempt Order, I found that further factual findings and conclusions were required in order to make the Third Contempt Order enforceable under Tenth Circuit law.  (Order, docket #48.)  Thus, in my March 30, 2009 order, I remanded the Third Contempt Order back to the Bankruptcy Court.  (Order, docket #48.)  I also stated that I would not address any other issues raised in the appeal

directly flowing from whether there is an enforceable contempt order in the case.

(Order, docket #48.)  On August 3, 2009, the Bankruptcy Court issued its Order on

Remand.  The Order on Remand supplements the Third Contempt Order, which is

based on the directives set forth in my March 30, 2009 order.  (United States

Bankruptcy Court docket #1516.)

On July 2, 2008, the Bankruptcy Court held a status hearing and again entered

an order finding the Appellant in contempt of court ("Fourth Contempt Order").  The

Fourth Contempt Order is the subject of pending appeal no. 08-cv-01645-WYD, which I

address in this Order.  In the Fourth Contempt Order, the Bankruptcy Court held

Appellant in contempt for failing to comply with previous orders and for conduct that

occurred between the Third Contempt Order and the July 2, 2008 status hearing.

Finally, I note that on July 20, 2009, the Debtor and the Trustee informed the

Court that they entered into a settlement agreement with respect to the underlying

bankruptcy proceedings.  The settlement agreement was approved by the Bankruptcy

Court.  Accordingly, on July 20, 2009, I ordered the Appellant and the Trustee to file

joint status reports as to how the settlement agreement of the underlying bankruptcy

proceedings affect the instant appeals.  On July 23, 2009, the parties submitted brief,

one-sentence status reports indicating that the pending appeals are unaffected, without

any further explanation or information.

III.    ANALYSIS

A.    Standard of Review

On appeal, I may affirm, modify, or reverse the Bankruptcy Court's order, or

remand with instructions for further proceedings.  *Kimco Leasing,Inc. v. Knee,* 144 B.R. 1001, 1005 (N.D.Ill. 1992).  I must review the findings of fact under a "clearly erroneous" standard.  *Id.*  A "finding of fact is clearly erroneous if it is without factual support in the record or if, after a review of all the evidence, we are left with the definite and firm conviction that a mistake has been made."  *In re Davidovich*, 901 F.2d 1533, 1536 (10th Cir. 1990).  I must review the Bankruptcy Court's conclusions of law, on the other hand, *de novo*.  *Id.*  "The burden of proof is on the party seeking to reverse a bankruptcy court's holding."  *In re Johnson*, 236 B.R. 510, 518 (D.C.Cir. 1999).  "That party must show that the court's holding was clearly erroneous as to its assessment of the facts or erroneous in its interpretation of the law, and not simply that another conclusion could have been reached."  *Id.*

Finally, a Bankruptcy Court's issuance of civil contempt sanctions is reviewed under an abuse of discretion standard.  *In re Armstrong*, 304 B.R. 432, 434 (10th Cir. BAP 2004).  Under the abuse of discretion standard, a bankruptcy court's decision will not be disturbed unless the "adjudication of the contempt proceedings is based upon an error of law or a clearly erroneous finding of fact."  *Id.*  "An abuse of discretion occurs when the trial court's decision is arbitrary, capricious or whimsical or results in a manifestly unreasonable judgment."  *In re Lang*, 305 B.R. 905, 908 (10th Cir. BAP 2004) (internal quotations omitted).  "As one court has put it, the question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion."  *Id.*

B.      Appeal No. 08-cv-00506-WYD

As previously mentioned, the Bankruptcy Court held the Appellant in civil

contempt of court for violating its orders that Appellant appear in person both for a

deposition and for the Contempt Hearing.  In this appeal, Appellant asserts that the

Bankruptcy Court lacked the power to order the Appellant to appear for a Rule 2004

deposition and the Contempt Hearing because no subpoena was ever issued or served,

thus requiring reversal of the First Contempt Order.  Finally, Appellant argues that he

was a United States national in a foreign country at the time the Bankruptcy Court

issued its orders compelling appearance, and the Bankruptcy Court erred in not

following the procedures set forth in Fed. R. Bankr. P. 9016 for the taking of testimony.

On the other hand, the Trustee argues that the matter before the Bankruptcy

Court was not an examination of a nondebtor pursuant to Fed. R. Bankr. P. 2004, but a

deposition of a party who was noticed under Fed. R. Bankr. P. 7030 (incorporating Fed.

R. Civ. P. 30).  Thus, no subpoena was required.  The Trustee also argues that Section

105(a) of the Bankruptcy Code authorizes a bankruptcy court to find a party in contempt

of court if the party violated a specific and definite court order and the party had notice

of the court order.

Turning to my analysis, I first address the issue of whether a subpoena was

required to compel the presence of Appellant at the court ordered

deposition/examination.  After reviewing the record before me, I find that there are

inconsistencies as to whether the deposition/examination was governed by Fed. R.

Bankr. P. 2004 (as argued by the Appellant) or Fed. R. Civ. P. 30, as incorporated by

Fed. R. Bankr. P. 7030.  In the Bankruptcy Court's oral ruling and its written orders, it refers to Appellant's deposition as a Rule 2004 examination, rather than the Rule 7030 deposition that was noticed by the Trustee.  The notice that was filed and served on the Appellant clearly states that the deposition is noticed pursuant to Rule 30 of the Federal Rules of Civil Procedure, as incorporated by Rule 7030 of the Federal Rules of Bankruptcy Procedure.

Fed. R. Bankr. P. 2004 provides in relevant part:

> (a) Examination on motion
> On motion of any party in interest, the court may order the examination of any entity.
> . . .
> (c) Compelling attendance and production of documents
> The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

Fed. R. Civ. P. 30, as incorporated by Fed. R. Bankr. P. 7030, applies in contested bankruptcy proceedings.  Fed. R. Bankr. P. 9014.  In this case, the Contempt Motion initiated a contested matter against the Appellant.  Rule 30 provides in relevant part:

> a) When a Deposition May Be Taken.
> (1) Without Leave. A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance **may** be compelled by subpoena under Rule 45.
> (2) With Leave. A party must obtain leave of court, and the

> court must grant leave to the extent consistent with Rule
> 26(b)(2):
> (A) if the parties have not stipulated to the deposition . . .

Rule 30 (emphasis added).  Thus, based on the cited law, it appears that a subpoena is

required to compel attendance at an examination pursuant to Fed. R. Bankr. P. 2004.

However, according to Wright & Miller, a subpoena is not required pursuant to Fed. R.

Civ. P. 30.  Although "the rules do not say so expressly, a subpoena is not necessary if

the person to be examined is a party."  Wright & Miller, 8A Federal Practice &

Procedure 2d.  Additionally, a number of courts have followed this reasoning.

*Continental Fed. Savings and Loan Assn. v. Delta Corp. of America*, 71 F.R.D. 697,

(W.D. Okla. 1976) (holding that notice "is all that is necessary to require attendance of

parties . . . and a subpoena was not required . . . ."); *Farquhar v. Shelden*, 116 F.R.D.

70 (E.D. Mich. 1987) (holding that a subpoena is not necessary for taking of deposition

if person to be examined is a party);  *In re Honda*, 106 B.R. 209 (Bankr. D. Haw. 1989)

(Notice for taking deposition is sufficient to compel attendance of witness who is party to

action; subpoena is not necessary).[1]  Here, it is unclear as to whether the

deposition/examination was to take place pursuant to Rule 2004 or Rule 7030.  The

Bankruptcy Court's oral and written rulings cite Rule 2004 while the filed notice

references Fed. R. Civ. P. 30, as incorporated by Fed. R. Bankr. P. 7030.  Thus, it is

impossible for me to rule on whether a subpoena was required to compel Appellant's

attendance for the deposition/examination.

---

[1] Interestingly, in his opening brief, the Appellant concedes that under Rule 30, a party need not be subpoenaed for a deposition, but argues the contrary in his reply brief.

However, I am able to rule on the issue of whether contempt was appropriate for Appellant's failure to appear at the Contempt Hearing, which will ultimately dispose of Appellant's appeal in its entirety.  In the appeal, Appellant next argues that he was not afforded proper due process because he was not served with a subpoena to appear at the Contempt Hearing.  I find this argument suspect.  At the preliminary hearing on January 24, 2008, the Bankruptcy Court specifically ordered the Appellant, who was present through his counsel, to appear at a hearing on February 20, 2008.  Moreover, the Bankruptcy Court ordered Appellant to file a response to the Contempt Motion on or before January 29, 2008.  Appellant filed his objection to the Contempt Motion on January 29, 2008 and specifically requested an evidentiary hearing on the motion.  Importantly, Appellant was represented by counsel at every hearing, and the record is clear that he received notice of all orders and communications by the Bankruptcy Court.

I now turn to Appellant's contention that he should have been served with a subpoena to appear at the Contempt Hearing because he was out of the jurisdiction of the Court.  As I previously noted, based on my initial review of the record, I could not find any facts that affirmatively state whether Appellant was present in Colorado or out of the country during the time the Bankruptcy Court ordered Appellant to appear at the Contempt Hearing.  Appellant's citations to the record are similarly unpersuasive.  Appellant's citations to a February 6, 2008 hearing indicate, in very general terms, that Appellant was in the Republic of Vanuatu at some point during January of 2008.  It is unclear whether Appellant was in Colorado when the Bankruptcy Court ordered him to attend the Contempt Hearing on January 24, 2008.

Since neither party cited any compelling evidence with respect to Appellant's whereabouts when the Contempt Motion was filed or when the Bankruptcy Court issued its order that the Appellant appear at the Contempt Hearing, I conducted an independent review of the record including the relevant audio recordings of the Bankruptcy Court's hearings.  After listening to the audio recordings, I conclude that Appellant was present in Colorado at some point during the morning of January 24, 2008.  The January 24, 2008 preliminary hearing commenced at 11:48 a.m.  Mr. Rand appeared as counsel for the Appellant.  At the beginning of the hearing, the Bankruptcy Court ordered the Appellant to attend the Contempt Hearing.  At 11:53:50 a.m., Mr. Rand asked the Bankruptcy Court for clarification as to whether the Appellant needed to attend the afternoon session of the hearing set to commence that same day at 2:30 p.m.  At 11:54 a.m., the Bankruptcy Court ordered the Appellant to personally attend the 2:30 p.m. hearing if he was not willing to sign share transfer certificates.  Mr. Rand agreed and confirmed that should the Appellant refuse to sign the stock transfer certificates, Appellant would be present at the afternoon session of the hearing.  Based on my review of the audio recordings of the January 24, 2008 hearing, I find that the Appellant was present in Colorado at some point such that his counsel represented that he would be able to attend the continuation of the preliminary hearing at 2:30 p.m. that same day.  (Audio Recordings of January 24, 2008 Bankruptcy Court's Preliminary Hearing.)  Additionally, the record is clear that Appellant is a United States citizen and was present in Colorado at times during the administration of the bankruptcy estate.  It is also clear that Appellant engaged in regular communications with his counsel.  Thus,

because I find there is evidence suggesting that Appellant was present in Colorado during the morning of January 24, 2008 when the Bankruptcy Court ordered Appellant's attendance at the Contempt Hearing and no concrete evidence to the contrary, I find that the Bankruptcy Court's order is valid, and there was no clear error on the face of the record.

I now turn to the issue of whether contempt was an appropriate sanction for the Appellant's failure to appear at the Contempt Hearing.  The Bankruptcy Court held the Appellant in civil contempt pursuant to its equitable powers set forth in 11 U.S.C. § 105 to "vindicate the dignity of the Court."  The Tenth Circuit has held that § 105 "granted bankruptcy courts the power to sanction conduct abusive of the judicial process." *Scrivner v. Mashburn,* 535 F.3d 1258, 1263 (10th Cir. 2008).  Appellant's argument that the Bankruptcy Court erred in invoking its equitable powers set forth in § 105 is not well-taken and wholly unsupported by any authority.

Turning to my analysis, I note that after carefully reviewing the record in this case, I am appalled at the conduct of the Appellant and his obvious efforts to thwart the administration of the underlying bankruptcy case.  It is clear that the Bankruptcy Court repeatedly ordered the Appellant to personally appear at the Contempt Hearing.  Appellant's flagrant disregard for the authority of the Court is astonishing.  I refer to a specific portion of the Bankruptcy Court's May 23, 2008 order:

> As a preliminary matter, the hearing and the presentation of evidence was severely hindered and impacted by the refusal of Mr. Bailey to personally attend.  Through the evidence and testimony presented at [the] hearing, Mr. Bailey was demonstrated to be a person with full and specific knowledge of the facts material to this proceeding.  Mr. Bailey's refusal to attend was in the face of prior

> orders of this Court requiring his attendance as well as contrary to
> his prior counsel's assurances to this Court of his attendance.  In
> fact, it was Mr. Bailey, in response to the Contempt Motion who
> stated: "The Creditor demands an evidentiary hearing be held in
> this matter requiring the Trustee to present proof of the allegations
> brought before the Court."  His failure to attend was purposeful,
> blatant, and unexcused.  Mr. Bailey also refused to appear twice for
> a deposition requested by Trustee and so ordered by this Court.

(Third Contempt Order at 5.)  After reviewing the record, I agree with both the

Bankruptcy Court and District Judge John L. Kane in his order denying a stay of the

contempt orders that "[t]here was clearly no lack of notice to the contemnees nor was

there a denial of due process and each had a full opportunity to be heard.  Mr. Bailey

[Appellant], who had demanded the evidentiary hearing, did not appear at all." (Judge

Kane's Order at 2, docket #19.)  The evidence presented by the Trustee was clear and

convincing that the Appellant interfered substantially with the Trustee's administration of

the bankruptcy estate and violated the Bankruptcy Court's orders.  Thus, I find that the

Appellant failed to satisfy his burden of showing clear error or an abuse of discretion on

the part of the Bankruptcy Court in holding the Appellant in civil contempt of court for

failure to appear at the Contempt Hearing.  Accordingly, the Bankruptcy Court's First

Contempt Order is affirmed, thus, I need not address Appellant's argument with regard

to the Bankruptcy Court's failure to issue a subpoena pursuant to Rule 2004.

Appellant's appeal is without merit and, therefore, dismissed.

C.    Appeal No. 08-cv-01645-WYD

In this appeal, Appellant objects to the Fourth Contempt Order, which is a

supplemental contempt order finding Appellant in contempt a second time for the same

conduct that formed the basis of the Third Contempt Order.  As I previously mentioned,

I remanded the Third Contempt Order to the Bankruptcy Court for more specific findings of fact and conclusions of law.  Since the pending appeal objects to a supplemental order based on the Third Contempt Order, I will briefly address the Bankruptcy Court's Order on Remand of the Third Contempt Order to assess its enforceability.

1.   <u>Order on Remand - Third Contempt Order</u>

In my March 30, 2009 order, I found that to be held in contempt, a court must find (1) the party violated a specific and definite court order; (2) the party had notice of the order; and (3) the party did in fact violate the order.  *In re Lucre Management Group, L.L.C.*, 365 F.3d 874, 875 (10th Cir. 2004); *Consumers Gas & Oil, Inc. v. Farmland Industries, Inc.*, 84 F.3d 367, 371 (10th Cir. 1996).  In *Consumers Gas*, Farmland Industries, Inc., appealed a district court order that held Farmland in contempt for breaching an order approving the parties' settlement agreement.  The Tenth Circuit reversed, holding that where the order approving the settlement did not expressly set forth the terms that the parties were to perform, the breach of the settlement agreement could not be punished by contempt.  *See also In re Zipper*, 207 B.R. 695, 698 (Bankr. Kan. 1997) (holding that if an approval order of a settlement agreement is intended to be footing for a finding of contempt it must contain language informing affected parties that they are within the structure of its commands).

Thus, I specifically remanded the Third Contempt Order to the Bankruptcy Court for additional factual findings, which: (1) specify how Appellant's conduct violated certain orders of the Bankruptcy Court; (2) identify the specific provisions of the Bankruptcy Court's orders that were violated; (3) demonstrate that the Appellant had notice of the

Bankruptcy Court's orders; (4) make conclusions and findings regarding whether Appellant took action after notice of the Bankruptcy Court's orders; (5) identify whether Appellant violated any provision of the Bankruptcy Code and which provisions were violated; and (6) specify whether Appellant actually interfered with the conduct of the Trustee and whether such interference rose to the level of civil contempt.

In its Order on Remand, the Bankruptcy Court supplemented the Third Contempt Order with thorough and comprehensive findings, satisfying each inquiry in the above enumerated list.  Specifically, the Bankruptcy Court detailed each order it issued with respect to the Appellant.  Then, the Bankruptcy Court painstakingly explained how Appellant received notice of its orders and specifically violated those orders (failing to appear, interfering with the administration of the estate, organizing a creditor revolt, using the media to impede the Trustee's authority, failing to submit to a deposition, failing to transfer shares, instigating faulty liens, and refusing to turn over estate assets). After carefully reviewing the Order on Remand, I find that the Bankruptcy Court properly invoked its § 105 power to find the Appellant in civil contempt.  I further find that the Order on Remand satisfies the requirements for a proper contempt finding under Tenth Circuit law.  The Bankruptcy Court found that the Appellant specifically violated its orders and had notice of those orders.  Thus, the finding of contempt and the resulting imposition of sanctions are appropriate, and the Order on Remand, which incorporates the findings and conclusions in the Third Contempt Order, is valid and enforceable.

2.      Fourth Contempt Order

Having found the Order on Remand, which supplements the Third Contempt

Order, enforceable, I now turn to Appellant's appeal of the Fourth Contempt Order.  By

way of background, the Bankruptcy Court conducted a July 2, 2008 status hearing in

order to ascertain whether the Debtor and the Appellant had complied with its series of

prior orders.  The Bankruptcy Court also held the July 2, 2008 hearing to afford both the

Debtor and the Appellant a reasonable amount of time after the issuance of its Third

Contempt Order on May 23, 2008 to comply with its prior orders, or otherwise purge

themselves of the contempt.  In its written Fourth Contempt Order, issued on July 25,

2008, the Bankruptcy Court stated that

> [t]he Court recognizes that sanctions, and especially serious
> and consequential sanctions, for civil contempt must be
> applied in a deliberate, measured and reasonable manner,
> and only after parties have had ample opportunity to comply
> with Court Orders or otherwise purge themselves of the
> contemptuous conduct.  That interval of time, May 23, 2008,
> until this date, has provided that ample opportunity.

(Fourth Contempt Order at 3.)  After holding the July 2, 2008 hearing and reviewing the

pleadings submitted by the parties, the Bankruptcy Court found that both the Debtor and

the Appellant "continued the same conduct previously found to be in violation of in prior

Court Orders and determined to be conduct in contempt of this Court.  Both of these

individuals have, directly and personally, ignored, evaded and defied prior Court Orders,

or knowingly refused and refrained from undertaking certain acts mandated in prior

Court Orders."  (Fourth Contempt Order at 3.)  In the Fourth Contempt Order, the

Bankruptcy Court issued the following sanctions and orders:

1. Judgment shall enter in favor of the Trustee and the within Estate, and against Douglas Bailey, in the sum of $147,000.00, representing the amount due for Mr. Bailey's failure to comply with Court Orders and his conduct constituting contempt of Court, commencing February 28, 2008 to July 25, 2008.

2. Monetary sanctions are hereby assessed against Douglas Bailey in the sum of $2,500.00 per day, commencing July 26, 2008 and continuing each day thereafter until Mr. Bailey writes notarized letters to all appropriate officials, entities and persons as designated herein withdrawing and disclaiming all demands, threats, complaints and claims previously made in Vanuatu as they pertain to the assets of the Estate and to rights, interests, and authority of the Trustee.

3. The Trustee is hereby awarded reasonable attorney fees and costs resulting from or related to the matters of contempt to the date of this Order, in addition to those orders previously entered. Trustee shall, on or before August 29, 2008, file with this Court and serve on Debtor and Mr. Bailey, as well as their respective counsel, a legally sufficient application for fees and costs. Debtor and Mr. Bailey shall, on or before September 15, 2008, file with this Court and serve on the Trustee and his counsel, their objection(s), if any, to the application, whereupon the matter shall stand submitted for consideration.

4. The United States Marshal's Service shall secure the presence of Douglas Bailey before this U.S. Bankruptcy Court for a hearing on these matters involving contempt of Court and Mr. Bailey's willingness to comply, or to not comply, with orders of this Court, or to otherwise purge himself of the described contempt, including writing the letters, or other suitable communication, referenced in paragraph two above.

The United States Marshal's Service shall notify such United States agencies and authorities as they deem necessary and appropriate of the issuance of this Order so Douglas Bailey can be taken into custody and brought before this Court when and if he returns to the United States.

> 5. The Trustee and Messrs. Van Vleet and Bailey shall, on or
> before August 29, 2008, file with this Court briefs on issues
> pertaining to securing the passports of Messrs. Van Vleet
> and Bailey.

(*Id.* at 8.)  Appellant appeals this order.

In the appeal, Appellant first contends that the Bankruptcy Court erred in imposing additional sanctions for conduct previously found to be contemptous because the Third Contempt Order is void.  Based on my finding that the Third Contempt Order and the supplemental Order on Remand are valid and enforceable, I reject Appellant's first argument on appeal.

Second, Appellant argues that the Bankruptcy Court erred in entering the Fourth Contempt Order to the extent that it finds additional conduct contemptuous because Appellant did not have prior notice or opportunity for a hearing.  I am unpersuaded by this argument.  As I previously detailed in this Order, and as the Bankruptcy Court stated in its numerous orders, the Appellant has engaged in a pattern of contemptuous conduct that has been present throughout the administration of the underlying bankruptcy estate.  In the Fourth Contempt Order, the Bankruptcy Court stated that the additional contempt sanctions were due to *ongoing* defiance of prior court orders, which include: (1) failing to appear at a deposition; (2) refusing to sign stock transfer documents; and (3) interfering with the administration of the estate.  I have already concluded that the Bankruptcy Court's finding of civil contempt was appropriate in this case because the Appellant had notice of the specific Bankruptcy Court orders and violated those orders.  *See In re Lucre Management Group, L.L.C.*, 365 F.3d at 875; *See Consumers Gas & Oil, Inc.*, 84 F.3d at 371.

Even if the Bankruptcy Court referenced "additional conduct" that Appellant had no notice of in the Fourth Contempt Order, the flagrant and continuing defiance of the Bankruptcy Court's prior contempt orders is sufficient to warrant additional sanctions under 11 U.S.C. § 105.  *See In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990).  The Bankruptcy Court found that the Appellant had specific notice of its orders and failed to comply.  To date, the Appellant still has not appeared for a Bankruptcy Court hearing or for a deposition.  This is evidence of Appellant's ongoing defiance of Bankruptcy Court orders.  These findings are not clearly erroneous.  Thus, I find that the Bankruptcy Court did not abuse its discretion in imposing additional contempt sanctions in the Fourth Contempt Order.  The appeal is without merit and is, therefore, dismissed.

D.     Appeal No. 08-cv-01870-WYD

By way of background, the Bankruptcy Court held a hearing ("Confirmation Hearing") on July 31, 2008 to address five separate issues: (1) confirmation of the second amended chapter 11 plan of reorganization proposed by the Trustee and objections filed by both the Debtor and Appellant; (2) the committee's objection to the Debtor's claim of exemption and post-petition earnings; (3) a continued hearing regarding issues pertaining to the contempt of court and the Bankruptcy Court's First Contempt Order dated May 23, 2008; (4) a continued hearing on the statement of fees and compensation; and (5) consideration of issues regarding the July 25, 2008 Fourth Contempt Order.  At the July 31, 2008 Confirmation Hearing, the Bankruptcy Court heard argument from the various parties, issued several orders, and took the confirmation issue under consideration.  On August 20, 2008, the Bankruptcy Court

issued its written Order Confirming Second Amended Chapter 11 Plan Proposed by

Trustee ("Plan"), Dated June 16, 2008 ("Confirmation Order").  Appellant filed a timely

appeal of the Confirmation Order, which is pending before me.

In the appeal, Appellant asserts three challenges to the Bankruptcy Court's

Confirmation Order.  First, Appellant claims that the Bankruptcy Court erred in striking

his objection to confirmation and barring Appellant's counsel from participating in the

Confirmation Hearing.  Second, Appellant argues that the Plan was not confirmable as a

matter of law because it enjoined Appellant from pursuing his claim against the

nondebtor Vanuatu entity, KIR.  Finally, Appellant claims that the Plan is not confirmable

as a matter of law because the "best interests of creditors" test was not satisfied as to

the Appellant.

1. <u>Whether the Bankruptcy Court Erred in Precluding Appellant's
Counsel from Participating in the Confirmation Hearing</u>

Appellant first claims that he had a constitutionally protected stake in the

outcome of the Confirmation Hearing of the Plan, and that the Plan affected his property

rights.  Appellant further argues that the Bankruptcy Court's order preventing his

counsel from participating in the Confirmation Hearing violated his Fifth Amendment

right to due process.

During the Confirmation Hearing, the Bankruptcy Court found that the Appellant

did not have standing to file objections to the confirmation of the Plan.  In support of its

conclusion, the Bankruptcy Court acknowledged that the issue of Appellant's standing is

both "troublesome" and "problematic."  (Hr'g Tr. 43:10-25, July 31, 2008.)  The

Bankruptcy Court found that "[a]t this stage, he [Appellant] doesn't have an allowed

claim.  He may be, perhaps indirectly if not directly, be an affected party or an impacted

party, but he is clearly an insider, and, of course, made that determination previously."

(Hr'g Tr. 43:23-25, 44:1-2.)  The Bankruptcy Court went on to detail the Appellant's

contemptuous conduct throughout the administration of the bankruptcy case and

explained his ruling this way.

> To this day after numerous hearings, he [Appellant] remains in contempt of the Court.  He has thus far done nothing to purge himself of the contempt and his attorney again informs us today he doesn't even know if his client will purge himself of the contempt that the Court has found.

> He has had a year and a quarter – excuse me, over a year and a half to work with this Court in a cooperative and supportive fashion, and he has utterly refused to do so having fled to Vanuatu and being beyond reach of the Court in many respects.  It would be so anomalous, so inconsistent to allow somebody for a long period of time to thumb its nose at the Court and yet recognize, respect, and embrace that person's participation in the Court as the Trustee tries to reorganize the debtor.

> This Court has over a long period of time extended the courtesy to Mr. Appel [Appellant's counsel] to appear and participate.  It was in the hope and expectation that Mr. Bailey would purge himself with the contempt and that he would not longer attempt to defy the Court and thwart the Trustee's efforts.  That to this day hasn't happened.  To this day, Mr. Bailey continues to defy the Court, stay in contempt, and ignore his obligations and responsibilities as a party to this.

> The Court is going to decline to allow him to have standing in this hearing, and I do so under Section 105.  Having said that, this Court believes that as long as the debtor's objections are dealt with, some of which are similar if not identical to Mr. Bailey's, and the debtor satisfies the obligations under Section 1129, each and all of them, then the absence of Mr. Bailey will probably have been a nonevent in any event.

> But this Court doesn't believe that standing should be accorded to a person who continues to defy Court orders to this day, to this day of confirmation, when he's had over a year and a half to be part of the process.

(Hr'g Tr. 44:11-25, 45:1-19.)

I reject Appellant's argument that the Bankruptcy Court erred and violated Appellant's due process rights by not permitting his counsel to participate in the Confirmation Hearing. In his oral ruling, the Bankruptcy Court made it clear that it was precluding the participation of Appellant's counsel in the Confirmation Hearing pursuant to its inherent powers set forth in § 105 of the Bankruptcy Code. Bankruptcy Courts have the power to "issue any order . . . necessary or appropriate to carry out the provisions of this title . . . [including] taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process . . . ." 11 U.S.C. § 105(a); *Skinner*, 917 F.2d at 447. Moreover, "[a]n inherent element of a court's contempt power is to punish the doing of a forbidden act or the refusal to do that which is required." *In re Aspen Limousine Service, Inc.*, 198 B.R. 341, 344 (D. Colo. 1996).

Here, I find that the Bankruptcy Court simply issued an appropriate sanction for Appellant's ongoing contemptuous conduct. I agree with the Bankruptcy Court that Appellant was given over a year and a half to comply with court orders and refused to do so. For the Appellant to now argue that he was denied due process because his counsel was not permitted to participate in a court hearing is unwarranted. The Bankruptcy Court has been ordering the Appellant to participate in court hearings for over a year to no avail. .

Moreover, throughout the course of the underlying proceedings, the Appellant has had notice of the court's numerous orders and has continued to disregard them. Specifically, in the written Confirmation Order, the Bankruptcy Court stated that it "had previously informed Bailey's counsel that if Bailey failed to obey the Court's orders to personally appear, the Court would not, as a sanction, allow him to appear by counsel alone." (Confirmation Order at 3.)  Thus, I find Appellant had notice that his counsel would likely not be permitted to participate in the Confirmation Hearing.  Importantly, the Bankruptcy Court found that Appellant's objections were similar, if not identical, to those of the Debtor.  As a result, Appellant's objections were heard and addressed even without the participation of Appellant's counsel at the Confirmation Hearing.  Therefore, based on my careful review of the record before me, I find no error or abuse of discretion with the Bankruptcy Court's order precluding Appellant's counsel from participating in the Confirmation Hearing as an additional contempt sanction pursuant to § 105.

> 2.   Whether the Bankruptcy Court Erred in Confirming the Plan of Reorganization Which Enjoined Appellant from Pursuing Claims Against Nondebtor Entities After Confirmation

Appellant next argues that the Bankruptcy Court erred in confirming the Trustee's Plan because the Plan bars Appellant from proceeding on his claim against nondebtor KIR.  The Appellant states that the Plan provides that all "Estate Assets" will be transferred to a trust and that the trust will make payments to creditors.  Article 5(B) of the Plan provides in part:  "Title to all of the Estate Assets shall be vested in the Trust free and clear of any liens, claims, interests or encumbrances of every nature except

claims representing the Vanuatu Debt . . . ."   "Estate Assets" is defined as including the

"Vanuatu Assets," which encompasses KIR.   (Ex. 2, Plan Article I(A).)   The Bankruptcy

Court's Confirmation Order also states that

> all Persons (as such term is defined in the Bankruptcy Code)
> and governmental units shall be stayed, restrained and
> enjoined from taking any of the following actions on account
> of any Claims, debts or liabilities against the Trust, the
> Bankruptcy Estate or Trustee: (I) commencing or continuing
> in any manner any action or other proceeding against the
> Bankruptcy Estate, Trustee or the Trust or their respective
> property; (ii) enforcing, attaching (including, without
> limitation, any prejudgment attachment), collecting or
> recovering any manner any judgment, award, decree or
> order against the Trust, the Bankruptcy Estate or Trustee, or
> their respective property . . .

(Confirmation Order at 12.)   Thus, Appellant claims that the Plan and the Confirmation

Order clearly bar him from proceeding on his claim against KIR, which violates Tenth

Circuit law.

In response, the Trustee argues that the Plan does not bar the Appellant from

pursuing his claim against KIR.   The Trustee states that there is no injunction contained

"in the Plan as it relates to legitimate creditors of KIR or to the $4,000,000 portion of

Bailey's claim."   (Trustee's Resp. Br. at 18.)   Instead, the Trustee states that the subject

injunction applies solely to the $25,000 portion of Appellant's claim that relates to what

the Bankruptcy Court found were fraudulent notes made by the Debtor and false

obligations of KIR or other entities.

Turning to my analysis, I note that in *In re Western Real Estate, Inc.*, 922 F.2d

592, 601-602 (10th Cir. 1990), the Tenth Circuit held that a bankruptcy court was

prohibited from issuing a permanent injunction that relieves a nondebtor from its own

liability to the creditor.  The Tenth Circuit stated that

> while a temporary stay prohibiting a creditor's suit against a nondebtor . . . during the bankruptcy proceedings may be permissible to facilitate the reorganization process in accord with the broad approach to nondebtor stays under section 105(a) outlined above, the stay may not be extended post-confirmation in the form of a permanent injunction that effectively relieves that nondebtor from its own liability to the creditor.

*Id.*

Based on my review of both the Plan and Confirmation Order, I find that the circumstances of this case are distinguishable from the *Western* case.  In *Western*, an attorney, who was brought into the bankruptcy proceeding as a third party defendant, asserted a legitimate claim against another third party in order to recover outstanding attorney's fees.  The Tenth Circuit held that it was improper for the bankruptcy court to confirm a reorganization plan that contained a permanent injunction precluding the attorney from attempting to recover any outstanding fees.

In contrast, here, I find Appellant's claim to be invalid.  Based on my careful review of the pleadings, the transcript of the Confirmation Hearing, the Plan, and the Bankruptcy Court's Confirmation Order, I find that Appellant's claim should be disallowed.  There is ample evidence to support the Bankruptcy Court's determination that Appellant's claim was nothing more than an intentional, fraudulent conveyance.  At the Confirmation Hearing, the Bankruptcy Court stated that "if it were able to estimate the [Appellant's] claim based on being familiar with the case for many, many months, would probably give it a value of zero . . . ."  (Hr'g Tr. 43:10-25, July 31, 2008.)  Moreover, Appellant has refused to make himself available for discovery regarding his

claim.  Thus, I find that the Plan does not improperly enjoin Appellant from asserting his

claim against KIR because Appellant's claim is invalid.  Accordingly,  I find no error with

the Bankruptcy Court's order confirming the Plan.

        3.      <u>Whether the Bankruptcy Court Erred in Confirming the Plan</u>
               <u>Because it Did Not Satisfy the Best Interests of the Creditors Test</u>
               <u>as to the Appellant</u>

The "best interests of the creditors" test is found at 11 U.S.C. § 1129(a)(7).

Section 129(a)(7) requires that the bankruptcy court shall confirm a plan only if the

following "best interests" test is satisfied:

> (7) With respect to each impaired class of claims or
> interests--
>       (A) each holder of a claim or interest of such class--
>            (I) has accepted the plan; or
>            (ii) will receive or retain under the plan on
> account of such claim or interest property of a value, as of
> the effective date of the plan, that is not less than the
> amount that such holder would so receive or retain if the
> debtor were liquidated under chapter 7 of this title on such
> date; . . .

*Id.*

Here, Appellant claims that as a consequence of the injunction against his pursuit

of his claim against nondebtor KIR, the Plan does not satisfy the "best interests of the

creditors" test.  Thus, the Bankruptcy Court erred in confirming the Plan.  Appellant

argues that since he objected to the confirmation of the Plan, § 1129(a)(7) requires that

Appellant's claim against KIR is not less than the amount he would receive if the Debtor

were liquidated under chapter 7.  Under the Plan, Appellant states that payment on his

Class 4 claim of $4,000,000 against KIR is limited to 20% of the claim amount, and he is

enjoined from pursuing that claim.  Thus, the most he could receive was 20% of

$4,000,000 or $800,000.  In a chapter 7 case, Appellant argues that he would not be enjoined from pursuing his claim against KIR (because there would be no confirmed plan), therefore, he could potentially recover the entire amount of his $4,000,000 claim. Under this scenario, Appellant claims that he would receive more if the Debtor were liquidated under chapter 7 than under the Plan, and thus, the "best interests of the creditors" test is not satisfied.

In response, the Trustee reiterates that Appellant's claim against KIR is not enjoined under the Plan and its value, if any, is what is in chapter 11 and chapter 7. The Trustee maintains that Appellant's claim against KIR is without merit, and indeed, it is not the Plan, but the numerous contempt orders that have prevented Appellant from suing KIR.  The Trustee argues that the contempt orders relate, in part, to Appellant's refusal to submit to discovery concerning his claim under the Service Agreement with the Debtor.  The Trustee goes on to say that Appellant's liquidation numbers are erroneous.  Appellant wrongly asserts that the value of KIR is $7,500,000 and the claims against KIR total $6,000,000.  However, Appellant's liquidation analysis does not reflect the claims of the estate against KIR (for "loans" made to KIR by the Debtor), which the Trustee has estimated at $5,600,000.  Thus, the Trustee asserts that Appellant's argument is premised on false assumptions and must fail.

Turning to my analysis, having found Appellant's claim against KIR to be invalid, I reject Appellant's arguments.  After carefully reviewing the record with respect to the confirmation of the Plan, I find that the "best interests of the creditors" test is satisfied pursuant to § 1129(a)(7).  I further find no error on the part of the Bankruptcy Court in

confirming the Plan.  Appellant's appeal is without merit and is, therefore, dismissed.

    E.    Appeal No. 08-cv-02109-WYD

    On September 19, 2008, the Bankruptcy Court issued an order to seize the

passport of the Appellant ("Passport Order").  In its Passport Order, the Bankruptcy

Court referenced and incorporated its Fourth Contempt Order dated July 25, 2008.  The

Bankruptcy Court made the following determinations in the Fourth Contempt Order:

> The Court has been informed that Mr. [Douglas] Bailey,
> a former resident of Colorado, has evidently moved to and
> may be residing in Vanuatu as of early 2008.  In any event,
> he has been personally completely absent for all hearings
> held in this Court and to which he has been ordered to
> appear.  The Court has been further informed that the
> Debtor has had his passport taken by authorities pending
> resolution of criminal charges filed against him.
>
> The Court has reviewed the very limited case law with
> respect to seizure of a person's passport, among those
> cases: *Fisher v. United States, United States v. Anello,
> United States v. Fawole,* and *Oliner v. Kontrabecki.*  The
> seizure of a passport potentially raises significant and
> consequential Constitutional issues under the Fourth and
> Fifth Amendment.  At this time, the Court is not yet prepared
> to seize the passports of Debtor and Mr. Bailey.  First, it
> appears that Debtor's passport is already secured by local
> authorities.  Second, with respect to Mr. Bailey, the court
> believes that it is appropriate to require further briefing on
> the subject of turning over passports to be filed with the
> Court on or before August 29, 2008.

(Fourth Contempt Order.)  Based on this language, the Trustee and the Debtor

submitting briefing to the Bankruptcy Court as to whether it possessed the authority to

confiscate a passport.  I note that the Appellant did not submit such a brief.  After

reviewing the briefing and the relevant case law, the Bankruptcy Court found that it had

the "authority to order the seizure of a passport as a contempt sanction and that such

seizure is necessary and appropriate under the circumstances of this case." (Passport Order.) The Bankruptcy Court ordered "[t]he United States Marshal, upon securing the presence of Mr. Bailey in the event that he returns to the United States of America, shall seize Mr. Bailey's passport . . . ." (Passport Order.) The Bankruptcy Court cited *In re Krause*, 367 B.R. 740, 776-77 (Bankr. D.Kan. 2007) and *In re Guyana Dev. Corp.*, 201 B.R. 462, 466 (Bankr. S.D. Tex. 1996) in support of its order.

Here, Appellant raises three arguments on appeal: (1) whether the Bankruptcy Court may impose additional contempt sanctions for non-compliance with prior contempt orders that are void; (2) whether the Bankruptcy Court has the power to order the seizure of the passport of a nondebtor; and (3) whether the Bankruptcy Court can order the seizure of a passport where it has already ordered the party's arrest.

Turning to my analysis, having found the previous contempt orders valid and enforceable, I reject Appellant's first argument on appeal. Appellant next argues that the Bankruptcy Court erred because not only did it lack the authority to seize Appellant's passport, but the Bankruptcy Court cannot impose both incarceration and the seizure of a passport as contempt sanctions in the same matter. I find these remaining arguments to be unavailing and wholly unsupported by controlling law. As I previously found, a Bankruptcy Court has the power to "issue any order . . . necessary or appropriate to carry out the provisions of this title . . . [including] taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process . . . ." 11 U.S.C. § 105(a); *Skinner*, 917 F.2d at 447. Moreover, I find that the cases cited by the Bankruptcy Court in its Passport Order, *In re*

*Krause*, 367 B.R. 740, 776-77 (Bankr. D.Kan. 2007) and *In re Guyana Dev. Corp.*, 201 B.R. 462, 466 (Bankr. S.D. Tex. 1996), support its conclusion that it had the authority to seize the Appellant's passport.

Similar to the facts of this case, in *Krause*, the bankruptcy court found the debtor in civil contempt of court for violating multiple court orders.  The court imposed appropriate sanctions, which included *inter alia* incarceration until the debtor purged his contempt and complied with the court's orders.  The court also ordered the seizure of the debtor's passport noting that the debtor took frequent trips to Switzerland, even while seeking living expenses from the estate and pleading poverty in support of those efforts.  The court concluded that "allowing Krause to retain his passport and flee beyond the territorial jurisdiction of this tribunal would be detrimental to the best interests of the creditors and the estate." *Krause*, 367 B.R. at 377.

In *Guyana*, the bankruptcy court held the debtor's principal, Callan, in contempt of court and ordered his arrest by the United States Marshal.  Callan was arrested and held until he purged his contempt.  Thereafter, Callan was released from custody but was ordered to surrender his passport.  Although, Callan surrendered his passport, he fled the United States anyway.  "Callen's interference with the trustee's administration of the estate did not cease after he went to jail for civil contempt." *Guyana*, 201 B.R. at 465-66.

Turning to the case at hand, while I acknowledge that the seizure of a passport is a serious sanction, I find that the Bankruptcy Court properly exercised its authority under § 105.  Similar to *Krause* and *Guyana*, the instant case is not the average

bankruptcy administration.  Throughout the pendency of this matter, the Appellant has demonstrated his propensity to flee the United States in order to avoid court orders and contempt sanctions.  According to the Bankruptcy Court's findings, Appellant is currently residing in Vanuatu and no longer living in the United States.  It is well-documented that the Appellant has continuously flouted the Court's authority and defied  numerous court orders.  Thus, I find that the Bankruptcy Court acted appropriately in issuing its contempt sanctions including the seizure of Appellant's passport.

Appellant argues that the instant case is distinguishable from both *Krause* and *Guyana* because those matters concerned the seizure of the debtor's passport.  The Appellant's claims that the Bankruptcy Court does not have the authority to seize a nondebtor's passport or impose both incarceration and the seizure of a passport are unpersuasive.   Appellant fails to put forth any binding authority supporting his arguments, and the language of *Krause* and *Guyana* suggest that a bankruptcy court has the authority to both seize a passport and order incarceration as contempt sanctions.  The burden of proof is on the party seeking to reverse a bankruptcy court's holding, and I find that the Appellant has not satisfied his burden.  The Appellant has failed to show that the Bankruptcy Court's seizure of his passport was clearly erroneous as to its assessment of the facts or erroneous in its interpretation of the law.  Accordingly, I find Appellant's appeal to be without merit, and it is dismissed.

F.   Civil Case No. 09-cv-00433

On February 27, 2009, Defendants Douglas Bailey and Tracy Bailey ("Defendants") filed a motion to withdraw the reference (docket #1).  Defendants' motion

was transmitted from the Bankruptcy Court and assigned to me on March 2, 2009.  In

the motion, Defendants request that pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P.

5011, and Local Bankruptcy Rule 511, the District Court withdraw the reference of the

adversary proceeding ("Complaint") filed by the Trustee and KIR ("Plaintiffs") in the

Bankruptcy Court.

By way of background, Plaintiffs commenced this adversary action by filing a

Complaint in the Bankruptcy Court on October 10, 2008.  The Complaint alleges

eighteen claims, eleven of which arise under the bankruptcy code.  The remaining

seven claims are the following state law claims: (1) fraud; (2) breach of fiduciary duty;

(3) aiding and abetting breach of fiduciary duty; (4) civil conspiracy; (5) quantum meruit;

(6) declaratory judgment; and (7) breach of contract.

Defendants argue that withdrawal of the reference is mandatory under 28 U.S.C.

§ 157(d), which provides that the district court must withdraw the reference if "resolution

of the proceeding requires consideration of both title 11 and other laws of the United

States regulating organization or activities affecting interstate commerce."  28 U.S.C.

§ 157(d).  Alternatively, Defendants suggest that permissive withdrawal of the reference

is appropriate in the interests of judicial economy.  The Plaintiffs oppose withdrawal of

the reference or either ground.

This Court has held that § 157(d) should be interpreted narrowly and should "not

become an escape hatch through which bankruptcy matters will be removed to the

district court."  *In re Leonard*, 124 B.R. 101, 102 (D. Colo. 1991).  Accordingly,

"mandatory withdrawal of the reference is required only if the district court can make an

affirmative determination that resolution of the claims will require substantial and material considerations of those non-Code statutes." *Id.* (internal quotations omitted). Courts have construed this phrase to mean that "substantial and material consideration arises when a determination of issues requires significant interpretations of federal law that congress would have intended to have decided by a district judge rather than a bankruptcy judge . . ." *Id.*

Defendants claim that the Plaintiffs' adversary proceeding will require substantial and material consideration of the legal claims, "which are the predominant claims in the Complaint." (Def.s' Mot. at 2.)   I disagree.   As I previously mentioned, the Complaint alleges eighteen claims, eleven of which arise under the bankruptcy code.   The remaining seven claims are governed by state law and are not novel or complex.   Thus, the Bankruptcy Court is not required to consider other laws of the United States regulating organizations or activities affecting interstate commerce.   Here, the Bankruptcy Court must hear the bankruptcy claims and then the various state law claims.   I find that there are no claims in the Complaint that will require the Bankruptcy Court to interpret federal law that congress intended to be decided by district court judges.

Similarly, permissive withdrawal of the reference is not warranted in this case.   I do not find that substantial judicial resources will be saved if the reference were withdrawn.   Instead, I find that "the interests of the parties and the public will be best served if decisions involving the core bankruptcy proceedings are made by the judge whose particular expertise will ensure the correct result." *Id.* at 103 (internal quotations

omitted).  This is especially true in a complex and lengthy bankruptcy administration such as this.

Defendants finally argue that they have not waived their right to a jury trial.  Thus, the reference must be withdrawn to allow the Defendants the opportunity to exercise their right to a jury trial in the district court.  The Supreme Court has held that "by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims . . ." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59 n.14 (1998).  However, this consent to the bankruptcy court's jurisdiction does not extend to "counterclaims which do not involve a preference, setoff, voidable lien, or fraudulent transfer, and which are wholly unrelated to the creditor's claim." *Katchen v. Landy*, 336 F.2d 535, 536-67 (10th Cir. 1964).

Turning to the facts of this matter, on May 3, 2008, Defendants filed a proof of claim in the amount of $4,025,000 against the estate.  Thus, I find that Defendants consented to the jurisdiction of the Bankruptcy Court and waived their right to a jury trial.  I further find the Bankruptcy Curt's jurisdiction is extended to the claims asserted in the Complaint as they are directly related to Defendants' $4,025,000 claim against the estate.  Specifically, Defendants' claim is based on Defendants' assertion that they are entitled to compensation for managerial services performed for the Debtor under a service agreement, as well as money due under a promissory note.  The claims asserted in the Complaint directly relate to the Defendants' claim and its disputed validity.  In fact, the legitimacy of Defendants' $4,025,000 claim is central to several of the issues on appeal set forth in this Order.  Therefore, I am very familiar with the issues

-34-

surrounding Defendants' claim and the Plaintiffs' opposition to its validity, and I find that

the Bankruptcy Court has jurisdiction over the claims asserted in the Complaint as they

directly relate to Defendants' $4,025,000 claim.  Thus, I reject Defendants' argument

that they are entitled to a jury trial.[2]  To the extent Defendants assert other arguments

with respect to the issue of a jury trial, they are rejected in kind.  Accordingly,

Defendants' motion to withdraw the reference is denied.

IV.    CONCLUSION

    Based on the foregoing, it is

    ORDERED that appeal no. 08-cv-00506-WYD is **DISMISSED**.  It is

    FURTHER ORDERED that appeal no. 08-cv-01645-WYD is **DISMISSED.**  It is

    FURTHER ORDERED that appeal no. 08-cv-01870-WYD is **DISMISSED**.  It is

    FURTHER ORDERED that appeal no. 08-cv-02109-WYD is **DISMISSED**.  It is

    FURTHER ORDERED that Defendant's motion to withdraw the reference (docket

#1) in civil case no. 09-cv-00433-WYD is **DENIED**.

    Dated:  September 30, 2009

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        Chief U. S. District Judge

---

[2] I note that Defendants fail to support their arguments with any binding authority.